## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

VB ASSETS, LLC,

                Plaintiff,

       v.

INTERNATIONAL BUSINESS
MACHINES CORPORATION,

                Defendant.

C.A. No. _____

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff VB Assets, LLC ("Plaintiff" or "VoiceBox"), by and through its undersigned counsel, files this Complaint against Defendant International Business Machines Corporation ("Defendant" or "IBM"), and alleges as follows:

## NATURE OF THE ACTION

1. This is an action for patent infringement under the Patent Laws of the United States, 35 U.S.C. §§ 100 et seq., including 35 U.S.C. § 271.

2. VoiceBox, through its predecessor companies VoiceBox Technologies Corporation and VoiceBox Technologies, Inc. (collectively, "VoiceBox Technologies"), pioneered voice-based natural language understanding and artificial intelligence (AI) technology.

3. In recognition of VoiceBox Technologies' many innovations, the U.S. Patent and Trademark Office issued the following United States Patents, among others: U.S. Patent Nos. 8,073,681 ("'681 patent"); 10,755,699 ("'699 patent"); 10,510,341 ("'341 patent"); 10,515,628 ("'628 patent"); 7,818,176 ("'176 patent"); 9,269,097 ("'097 patent"); 8,145,489 ("'489 patent"); and 8,527,274 ("'274 patent") (collectively the "VoiceBox Patents").

4.      The innovations in the VoiceBox Patents are fundamental to modern-day voice assistants and voice-based AI systems that have become increasingly popular and well-known in recent years. As set forth in more detail herein, IBM is and has been infringing the VoiceBox Patents.

5.      IBM is and has been infringing the VoiceBox Patents with its Watson products and services comprising voice assistants, voice-based AI systems, and voice-recognition technologies, including Watson Assistant, watsonx Assistant, Watson Assistant for Voice Interaction, watsonx Orchestrate, Voice Agent with Watson, the software and hardware implementing and allowing users to interact with these products and services, such as voice recognition- and natural language processing-related software modules, computer-readable instructions, processors, and servers,[1] including as set out in the claim charts attached as exhibits to this Complaint, and any instrumentalities identified and referenced in the attached claim charts not listed here (collectively, the "Accused IBM Products").

6.      VoiceBox brings this case to hold IBM accountable for its infringement of VoiceBox's patent rights, and VoiceBox seeks all available relief for IBM's infringement.

## PARTIES

7.      VB Assets, LLC, is a limited liability company organized under the laws of Delaware with a principal place of business at 1229 120th Avenue NE, Suite A, Bellevue, Washington 98005.

8.      On information and belief, IBM is a corporation organized and existing under the laws of the State of New York with a place of business located at 1 New Orchard Road, Armonk,

---

[1] *See, e.g.*, https://github.com/ibm-cloud-docs (presenting, among other things, information about software, software modules, and service architectures relating to IBM speech-to-text and natural language processing); *see also* Exhibits I-P (infringement claim charts).

New York 10504. IBM has a registered agent to accept service of process within the State of Delaware located at Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.

**JURISDICTION AND VENUE**

9.      This Court has original jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States.

10.     Personal jurisdiction over IBM is proper in this District based on one or more of the following: IBM's presence in this District; IBM having availed itself of the rights and benefits of the laws of Delaware; and IBM deriving substantial revenue from sales of products in Delaware, including the Accused IBM Products, and maintaining systematic and continuous business contacts here. IBM has admitted this Court has personal jurisdiction over it. *See Trusted Knight Corp. v. IBM*, No. 1:14-cv-01063, Dkt. 12, ¶ 3 (D. Del. Oct. 9, 2014); *Kaavo v. IBM*, No. 1:14-cv-00355, Dkt. 10, ¶ 6 (D. Del. Jun. 12, 2014).

11.     Venue is proper in this district under 28 U.S.C. § 1400(b). IBM has committed acts of infringement in this District, including because the Accused IBM Products are offered for sale, sold, and used in this District and because IBM has partnered with or licensed Delaware corporations to sell products based on and implementing the Accused IBM Products here. Further, IBM has regular and established places of business here, including, on information and belief, places of business at 1001 N Jefferson St, Wilmington, Delaware 19801 and 540 S College Avenue, Newark, Delaware 19713, from which it regularly conducts business. IBM has not contested venue in this District before, including under 28 U.S.C. § 1400(b). *See CoolTVNetwork.com v. IBM*, No. 19-cv-293, Dkt. 9 (Answer) ¶ 8 (D. Del. Apr. 5, 2019) ("IBM does not presently contest venue in this

matter. IBM admits that it conducts business in Delaware.").

## BACKGROUND

**A. VoiceBox Technologies invents groundbreaking voice technology.**

12.     In 2001, three brothers, Mike, Rich, and Bob Kennewick, founded VoiceBox Technologies to bring natural language understanding ("NLU") to a wide array of computer applications. They recognized that typical computer speech-recognition systems forced human operators to adhere to a limited number of rigid speech prompts. These rigid prompts limited how systems were used and inhibited the widespread adoption of speech-recognition systems. The brothers believed that VoiceBox Technologies could become the first company to enable people to naturally and effectively interact with computer speech systems.

13.     From its inception, VoiceBox Technologies engaged in intense research efforts to develop its NLU technology. As part of these efforts, VoiceBox Technologies achieved a significant milestone when it developed an early prototype called "Cybermind." As demonstrated on the Seattle King5 evening news, Cybermind was a voice-controlled speaker that could provide weather, recipes, sports scores, calendar updates, or play music.



**Figure 1: Cybermind Prototype**
(https://www.youtube.com/watch?v=DDcRyPnvWhw)

14. In 2013, the Institute of Electrical and Electronics Engineers ranked VoiceBox Technologies number 13 in patent power for the computer software industry.

**Computer Software**

| Rank | Company / Organization | Country of Headquarters | 2012 U.S. Patents | Pipeline Growth Index | Pipeline Impact | Self-Citations (%) | Adjusted Pipeline Impact | Pipeline Generality | Pipeline Originality | Pipeline Power |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Microsoft Corp. | United States | 2665 | 1.14 | 1.07 | 0.22 | 1.07 | 1.19 | 1.01 | 3909.67 |
| 2 | VMware Inc. | United States | 106 | 1.89 | 3.07 | 0.16 | 3.07 | 3.02 | 1.06 | 1966.63 |
| 3 | Citrix Systems Inc. | United States | 112 | 1.56 | 2.83 | 0.27 | 2.83 | 2.62 | 1.12 | 1441.86 |
| 4 | Symantec Corp. | United States | 379 | 1.34 | 1.54 | 0.16 | 1.54 | 1.63 | 1.01 | 1297.47 |
| 5 | Digimarc Corp. | United States | 94 | 0.9 | 5 | 0.88 | 2.08 | 4.8 | 1.12 | 944.96 |
| 6 | Oracle Corp. | United States | 913 | 0.92 | 1 | 0.12 | 1 | 1.13 | 0.98 | 930.36 |
| 7 | CommVault Systems Inc. | United States | 52 | 1.3 | 5 | 0.88 | 2.1 | 5 | 1.22 | 866.39 |
| 8 | Cadence Design Systems Inc. | United States | 158 | 1.15 | 2.45 | 0.15 | 2.45 | 1.76 | 0.89 | 699.87 |
| 9 | Adobe Systems Inc. | United States | 332 | 1.13 | 1.14 | 0.18 | 1.14 | 1.24 | 1 | 526.88 |
| 10 | Rovi Corp. | United States | 97 | 1.47 | 1.85 | 0.25 | 1.85 | 1.91 | 1.02 | 514.34 |
| 11 | TeleCommunication Systems Inc. | United States | 57 | 1.36 | 2.35 | 0.42 | 2.06 | 2.52 | 1.12 | 451.72 |
| 12 | SAP AG | Germany | 601 | 1.1 | 0.74 | 0.23 | 0.74 | 0.85 | 1.02 | 424.91 |
| 13 | Voicebox Technologies Inc. | United States | 11 | 1.83 | 5 | 0.65 | 3.26 | 5 | 1.29 | 423.56 |
| 14 | Sony Computer Entertainment Inc. | Japan | 220 | 1.33 | 1.1 | 0.36 | 1.03 | 1.26 | 1.08 | 409.7 |
| 15 | Bally Technologies Inc. | United States | 98 | 1.78 | 1.46 | 0.38 | 1.35 | 1.83 | 0.9 | 388.27 |
| 16 | Smith Micro Software Inc. | United States | 18 | 3 | 2.8 | 0.17 | 2.8 | 2.41 | 0.97 | 353.44 |
| 17 | McAfee Inc. | United States | 84 | 1.33 | 2.02 | 0.39 | 1.85 | 1.61 | 1.04 | 347.02 |
| 18 | Nuance Communications Inc. | United States | 160 | 1.15 | 1.19 | 0.3 | 1.19 | 1.56 | 1.02 | 345.99 |
| 19 | Synopsys Inc. | United States | 148 | 0.95 | 1.61 | 0.08 | 1.61 | 1.17 | 1.06 | 280.46 |
| 20 | Infosys Ltd. | India | 29 | 1.93 | 2.52 | 0.04 | 2.52 | 1.75 | 1.02 | 253.69 |

Source:  IEEE Spectrum Patent Power 2013

15. By this point, VoiceBox Technologies had invested in a large team of engineers, scientists, linguists, and other personnel, some of which are shown below.



**Figure 5: Company Photograph**

**B. The VoiceBox Patents**

**1. The '681 Patent**

16.     The '681 patent, titled "System and Method for a Cooperative Conversational Voice User Interface," was duly and legally issued on December 6, 2011, and names Larry Baldwin, Tom Freeman, Michael Tjalve, Blane Ebersold, and Chris Weider as the inventors. A true and correct copy of the '681 patent is attached as Exhibit A.

17.     The '681 patent describes and claims, among other things, systems and methods for providing a cooperative conversational voice user interface comprising receiving an utterance at a voice input device, during a current conversation with a user, wherein the utterance includes one or more words that have different meanings in different contexts; accumulating short-term shared knowledge about the current conversation, wherein the short-term shared knowledge includes knowledge about the utterance received at the voice during the current conversation; accumulating long-term shared knowledge about the user, wherein the long-term shared knowledge includes knowledge about one or more past conversations with the user; identifying a context associated with the utterance, wherein a conversational speech engine identifies the context associated with the utterance from the short-term shared knowledge and the long-term shared knowledge; establishing an intended meaning for the utterance within the identified context, wherein the conversational speech engine establishes the intended meaning within the identified context to disambiguate an intent that the user had in speaking the one or more words that have the different meanings in the different contexts; and generating a response to the utterance, wherein the conversational speech engine grammatically or syntactically adapts the response based on the intended meaning established within the identified context.

18.     VoiceBox is the assignee of the entire right, title, and interest in the '681 patent.

**2. The '699 Patent**

19.     The '699 patent, titled "System and Method for a Cooperative Conversational Voice User Interface," was duly and legally issued on August 25, 2020, and names Larry Baldwin, Tom Freeman, Michael Tjalve, Blane Ebersold, and Chris Weider as the inventors. A true and correct copy of the '699 patent is attached as Exhibit B.

20.     The '699 patent describes and claims, among other things, systems and methods for generating natural language system responses adapted based on a user's manner of speaking, the method being implemented by a computer system that includes one or more physical processors executing one or more computer program instructions which, when executed, perform the method, the method comprising: receiving, by the computer system, a user input comprising a natural language utterance; recognizing, by the computer system, one or more words or phrases from the natural language utterance; identifying, by the computer system, a context for the natural language utterance based on the one or more words or phrases recognized from the natural language utterance; determining, by the computer system, an interpretation of the natural language utterance based on the identified context; accumulating, by the computer system, short-term knowledge based on one or more natural language utterances received during a predetermined time period, wherein the one or more natural language utterances received during the predetermined time period are related to a single conversation between a user and the computer system; accumulating, by the computer system, long-term knowledge, wherein the long-term knowledge is accumulated based on one or more natural language utterances received prior to the predetermined time period; identifying, by the computer system, a manner in which the natural language utterance was spoken based on the short-term knowledge and the long-term knowledge; and generating, by the computer

- 7 -

system, a response to the natural language utterance based on the interpretation and the identified manner in which the natural language utterance was spoken.

21.     VoiceBox is the assignee of the entire right, title, and interest in the '699 patent.

**3. The '341 Patent**

22.     The '341 patent, titled "System and Method for a Cooperative Conversational Voice User Interface," was duly and legally issued on December 17, 2019, and names Larry Baldwin, Tom Freeman, Michael Tjalve, Blane Ebersold, and Chris Weider as the inventors. A true and correct copy of the '341 patent is attached as Exhibit C.

23.     The '341 patent describes and claims, among other things, systems and methods for facilitating natural language system responses utilizing accumulated short-term and long-term knowledge, the system comprising: one or more physical processors programmed with one or more computer program instructions which, when executed, configure the one or more physical processors to: accumulate short-term knowledge based on one or more natural language utterances received during a predetermined time period; expire one or more items of short-term knowledge that are based on one or more natural language utterances received prior to the predetermined time period; accumulate long-term knowledge based on one or more natural language utterances received prior to the predetermined time period, wherein the long-term knowledge includes at least one of the one or more expired items of short-term knowledge; receive a first natural language utterance via an input device; determine a first context for the first natural language utterance based on the short-term knowledge and the long-term knowledge; determine an interpretation of the first natural language utterance based on the first context; and generate a first response to the first natural language utterance based on the interpretation.

24.     VoiceBox is the assignee of the entire right, title, and interest in the '341 patent.

**4. The '628 Patent**

25.     The '628 patent, titled "System and Method for a Cooperative Conversational Voice User Interface," was duly and legally issued on December 24, 2019, and names Larry Baldwin, Tom Freeman, Michael Tjalve, Blane Ebersold, and Chris Weider as the inventors. A true and correct copy of the '628 patent is attached as Exhibit D.

26.     The '628 patent describes and claims, among other things, systems and methods for facilitating natural language system responses utilizing accumulated short-term and long-term knowledge, the system comprising: one or more physical processors programmed with one or more computer program instructions which, when executed, configure the one or more physical processors to: accumulate short-term knowledge based on one or more natural language utterances received during a predetermined time period; expire one or more items of short-term knowledge that are based on one or more natural language utterances received prior to the predetermined time period; accumulate long-term knowledge based on one or more natural language utterances received prior to the predetermined time period, wherein the long-term knowledge includes at least one of the one or more expired items of short-term knowledge, first long-term knowledge associated with a first user based on one or more natural language utterances received from the first user, and second long-term knowledge associated with a second user based on one or more natural language utterances received from the second user; receive a first natural language utterance via an input device; determine a first context for the first natural language utterance based on the short-term knowledge and the long-term knowledge; determine an interpretation of the first natural language utterance based on the first context; and generate a first response to the first natural language utterance based on the interpretation.

27.     VoiceBox is the assignee of the entire right, title, and interest in the '628 patent.

**5. The '681, '699, '341, and '628 patents claim patent-eligible subject matter.**

28.    Earlier voice user interface systems that predated the inventions of the '681, '699, '341, and '628 patents were typically of the "Command and Control" type, which forced users to interact with rigid, pre-defined verbal menus rather than to speak naturally.  As the '681 patent, for example, explains, then-existing human-to-machine interfaces failed to provide the same level of intuitive interaction that characterizes human-to-human conversation, including because they did not allow a user to directly request what they wanted from a system in a normal, conversational fashion. For example, the voice system would present a list of available options in a menu of choice, and the user could select an option by saying the menu item, much like a Command-and-Control phone directory service that asks, in sequence, "State please," "City Please," "What listing," etc. Such a system could include numerous menus that the user would have to get through to convey the desired information to the system and/or to cause the system to take the desired action. This type of system failed to provide the sort of seamless conversational experience that the Voicebox inventors envisioned.

29.    The inventors of the '681, '699, '341, and '628 patents recognized a problem with Command-and-Control systems in that users would have to memorize exact words and phrases to interact with the system. This required significant learning because the user had to know which words and phrases to use to make a request of a particular Command-and-Control voice user interface system, and, when the user was uncertain of a particular need, there was virtually no option for dialogue between the user and the system to satisfy mutual goals, as the '681 patent, for example, explains. Additionally, the process of stepping through menus could be time-consuming and, in some cases, would dissuade a user from utilizing the voice-based system and inhibit mass-market adoption.

30.     To overcome the shortcomings of prior art systems, the inventors conceived of innovative and unconventional systems and methods comprising, among other things, speech recognition engines that generated preliminary interpretations of utterances, including through recognition of streams of phonemes, and coupled conversational speech engines, including conversational speech engines comprising conversational language processors and context determinations processes, that can be implemented locally on a user device or remotely on a server. Unlike pre-existing Command-and-Control systems, which required users to select from verbal menus that restricted information that a person could provide at a given point, the inventors' systems and methods could identify all information relevant to completing a task without requiring users to navigate such fixed sequences. And these systems and methods, including their context determination processes, further departed from conventional voice-recognition architectures by continually updating models of an existing context as a by-product of conversations, in contrast to pre-existing systems that considered each utterance independently and thus potentially made the same errors over and over again.

31.     With such systems and methods, the '681, '699, '341, and '628 patents advantageously rely on conversational responses which in certain embodiments use short-term and/or long-term shared knowledge about user utterances to determine contexts for requests, infer additional information about requests, and provide adaptive conversational responses. For example, the claimed systems accumulate short-term shared knowledge in session-based contexts, build long-term knowledge models that persist, and use both to identify a context and establish intended meanings for utterances. And the claimed conversational speech engines also can then generate

grammatically or syntactically adapted responses, including responses that frame follow-up questions to elicit easily recognized replies and course correct after misrecognitions without interrupting conversational flow.

32.    The inventors were thereby able to improve the functioning of voice user interface systems and improve the operation of those systems in an unconventional manner. For example, the innovations in the '681, '699, '341, and '628 patents allow users to converse naturally with voice user interface systems instead of "dumbing down" their requests to match the simple sets of instructions that then-existing Command and Control systems required. And the claimed inventions' improvements do not merely recite abstract ideas, such as conversing on a generic computer; rather, they result from the unconventional ordered combinations of claimed elements—including, for example, speech recognition engines that generate preliminary interpretations, conversational language processors that identify context from short-term and long-term knowledge, disambiguate intended meanings, and generate grammatically or syntactically adapted responses. Such ordered combinations did not exist in earlier systems, which instead treated each utterance in isolation and required users to conform their speech to rigid menu structures. In this regard, one of the problems faced by the inventors was necessarily rooted in technology specifically arising in the realm of voice user interface systems. The commercial successes and industry accolades enjoyed by Voice-Box Technologies and its innovations further demonstrate and provide objective evidence that those innovations were novel, non-obvious, and unconventional.

33.    For at least these reasons, persons of ordinary skill in the art would not consider the claim limitations of the '681, '699, '341, and '628 patents—either alone or in combination—to recite abstract, well-understood, routine, or conventional concepts. Instead, skilled artisans would recognize that these patents are directed to the novel, non-obvious, and unconventional innovations

they describe and claim.

### 6. The '176 Patent

34.    The '176 patent, titled "System and Method for Selecting and Presenting Advertisements Based on Natural Language Processing of Voice-Based Input," was duly and legally issued on October 19, 2010, and names Tom Freeman and Mike Kennewick as the inventors. A true and correct copy of the '176 patent is attached as Exhibit E.

35.    The '176 patent describes and claims, among other things, systems and methods for selecting and presenting advertisements in response to processing natural language utterances, comprising: an input device that receives a natural language utterance containing at least one request at an input device; a speech recognition engine coupled to the input device, wherein the speech recognition engine recognizes one or more words or phrases in the natural language utterance, wherein to recognize the words or phrases in the natural language utterance, the speech recognition engine is configured to: map a stream of phonemes contained in the natural language utterance to one or more syllables that are phonemically represented in an acoustic grammar; and generate a preliminary interpretation for the natural language utterance from the one or more syllables, wherein the preliminary interpretation generated from the one or more syllables includes the recognized words or phrases; a conversational language processor coupled to the speech recognition engine, wherein the conversational language processor is configured to: interpret the recognized words or phrases, wherein interpreting the recognized words or phrases includes establishing a context for the natural language utterance; select an advertisement in the context established for the natural language utterance; and present the selected advertisement via an output device.

36.    The '176 patent further describes and claims, among other things, systems and methods for selecting and presenting advertisements in response to processing natural language

- 13 -

utterances, comprising: an input device that receives a natural language utterance containing at least one request at an input device; a speech recognition engine coupled to the input device, wherein the speech recognition engine recognizes one or more words or phrases in the natural language utterance; a conversational language processor coupled to the speech recognition engine, wherein the conversational language processor is configured to: interpret the recognized words or phrases, wherein interpreting the recognized words or phrases includes establishing a context for the natural language utterance; select an advertisement in the context established for the natural language utterance; and present the selected advertisement via an output device; and an adaptive misrecognition engine configured to determine that the conversational language processor incorrectly interpreted the words or phrases in response to detecting a predetermined event, wherein the conversational language processor reinterprets the words or phrases in response to the predetermined event.

37.     VoiceBox is the assignee of the entire right, title, and interest in the '176 patent.

**7. The '097 Patent**

38.     The '097 patent, titled "System and Method for Delivering Targeted Advertisements and/or Providing Natural Language Processing Based on Advertisements," was duly and legally issued on February 23, 2016, and names Tom Freeman and Mike Kennewick as the inventors. A true and correct copy of the '097 patent is attached as Exhibit F.

39.     The '097 patent describes and claims, among other things, systems and methods for providing natural language processing based on advertisements, the system comprising: one or more physical processors programmed with computer program instructions which, when executed, cause the one or more physical processors to: provide an advertisement associated with a product or service for presentation to a user; receive a natural language utterance of the user; and interpret

the natural language utterance based on the advertisement and, responsive to the existence of a pronoun in the natural language utterance, determine whether the pronoun refers to one or more of the product or service or a provider of the product or service.

40.     VoiceBox is the assignee of the entire right, title, and interest in the '097 patent.

**8. The '489 Patent**

41.     The '489 patent, titled "System and Method for Selecting and Presenting Advertisements Based on Natural Language Processing of Voice-Based Input," was duly and legally issued on March 27, 2012, and names Tom Freeman and Mike Kennewick as the inventors. A true and correct copy of the '489 patent is attached as Exhibit G.

42.     The '489 patent describes and claims, among other things, system and methods for selecting and presenting advertisements in response to natural language utterances, comprising: a speech recognition engine configured to recognize one or more words or phrases in a natural language utterance; a conversational language processor configured to interpret the one or more recognized words or phrases to establish a context associated with the natural language utterance; and a server associated with the speech recognition engine and the conversational language processor, wherein the server is configured to: deliver an advertisement in the established context associated with the natural language utterance to an electronic device in communication with the server; track an interaction pattern associated with the advertisement delivered to the electronic device; and update, based on the tracked interaction pattern associated with the advertisement, one or more models to include updated information associated with a specific user, updated information associated with a plurality of users, and updated information relating to environmental conditions or surroundings associated with the specific user, wherein the conversational language processor is further configured to use long-term shared knowledge and short-term shared knowledge derived

- 15 -

from the updated information associated with the one or more updated models to interpret a subsequent natural language utterance.

43.     VoiceBox is the assignee of the entire right, title, and interest in the '489 patent.

**9. The '274 Patent**

44.     The '274 patent, titled "System and Method for Delivering Targeted Advertisements and Tracking Advertisement Interactions in Voice Recognition Contexts," was duly and legally issued on September 3, 2013, and names Tom Freeman and Mike Kennewick as the inventors. A true and correct copy of the '274 patent is attached as Exhibit H.

45.     The '274 patent describes and claims, among other things, systems and methods for delivering targeted advertisements and tracking advertisement interactions in voice recognition contexts, comprising: one or more processors configured to: receive a natural language utterance from a voice-enabled device; process the natural language utterance to identify one or more requests associated with the natural language utterance; determine that the natural language utterance contains a request that is incomplete or ambiguous; select one or more advertisements associated with the natural language utterance; output the one or more selected advertisements to the voice-enabled device; monitor interaction between a user and the one or more selected advertisements; and interpret the request that is incomplete or ambiguous based on the interaction.

46.     VoiceBox is the assignee of the entire right, title, and interest in the '274 patent.

**10. The '176, '097, '489, and '274 patents claim patent-eligible subject matter.**

47.     Before the inventions of the '176, '097, '489, and '274 patents, earlier voice user interface systems were typically difficult to use, in part because they had complex human-to-machine interfaces. As the '097 patent, for example, explains, earlier systems tended to have complex

human-to-machine interfaces, which inhibited mass-market adoption, including because when users wished to perform relatively simple tasks, they were often forced to navigate through a series of menus and press a series of buttons, which could result in a transaction not occurring, including due to users preferring to avoid such hassles altogether.

48.    The inventors recognized problems with existing systems. As the '097 patent, for example, explains, such systems did not allow a user to directly issue a request without having to memorize specific syntaxes, words, phrases, concepts, semantic indicators, or other keywords/qualifiers. Similarly, when users were uncertain of particular needs, many existing systems did not engage the user in productive, cooperative dialogue to resolve requests and advance conversations. Instead, many existing speech interfaces forced users to use a fixed set of commands or keywords to communicate requests in ways that systems would understand. Using existing voice user interfaces, there was virtually no option for dialogue between the user and the system to satisfy mutual goals.

49.    The inventors recognized other problems with existing systems. The lack of adequate voice user interfaces resulted in missed opportunities for providing valuable and relevant information to users. Not only did this potentially leave user requests unresolved, in certain instances, providers of goods and services could lose out on potential business. In an increasingly global marketplace, where marketers are continually looking for new and effective ways to reach consumers, the problems with existing voice user interfaces left a large segment of consumer demand unfulfilled. Furthermore, existing techniques for marketing, advertising, or otherwise calling consumers to action failed to effectively utilize voice-based information, which is one of the most natural and intuitive methods of human interaction.

50. In certain embodiments, the '176, '097, '489, and '274 patents advantageously use systems and methods comprising speech recognition engines that map streams of phonemes, generate preliminary interpretations, and coupled conversational language processors that make context determinations, generate context-based interpretations, and utilize adaptive misrecognition features to interpret natural language utterances, establish context for natural language utterances, identify requests associated with natural language utterances, and select and present advertisements to the user based on that context. With such systems and methods, the inventors were able to improve the functioning of voice user interface systems and thereby improve the operation of those systems in an unconventional manner. For example, the innovations of the '176, '097, '489, and '274 patents allow users to directly issue natural language requests and engage in productive, cooperative dialogues to resolve requests and advance conversations. In this regard, one of the problems faced by the inventors was necessarily rooted in technology specifically arising in the realm of voice user interface systems.

51. The '176 patent describes and claims systems and methods for selecting and presenting advertisements in response to processing natural language utterances that use a speech recognition engine and a conversational language processor to interpret a natural language utterance, establish context, select an advertisement, and present it to the user. The patent further describes and claims using a speech recognition engine configured to map a stream of phonemes contained in the natural language utterance to one or more syllables that are phonemically represented in an acoustic grammar and generate a preliminary interpretation for the natural language utterance from the one or more syllables, wherein the preliminary interpretation generated from the one or more syllables includes the recognized words or phrases. Conventional knowledge among persons of ordinary skill in the art did not include such systems and methods, as claimed,

nor did skilled artisans at the time recognize the substantial advantages associated with such systems and methods, including based on the use of a speech recognition engine with a conversational language processor to interpret a natural language utterance, establish context, select an advertisement, and present it to the user. In this regard, the '176 patent's systems and methods stood in sharp contrast to the conventional and routine approaches of existing systems that, for example, required a user to memorize specific syntaxes, words, phrases, concepts, semantic indicators, or other keywords/qualifiers; they were not well-understood, routine, or conventional.

52.    The '097 patent describes and claims systems and methods for providing natural language processing based on advertisements which includes interpreting, by physical processors programmed with executable computer program instructions, a natural language utterance based on an advertisement and, responsive to the existence of a pronoun in the natural language utterance, determining whether the pronoun refers to one or more of a product or service or a provider of the product or service from the advertisement. VoiceBox Technologies knew that contexts for utterances were important for ascertaining the meanings of users' utterances and recognized the need to address contexts related to pronouns in natural language utterances, including pronouns referring to products, services, and providers. The conventional approach would have been to direct the user to utter from a discrete dictionary of words, and before the inventions of the '097 patent, systems would reject or otherwise disregard attempted uses of pronouns, e.g., due to inherent ambiguity. The inventors of the '097 patent, however, recognized that the use of a pronoun is not necessarily ambiguous when viewed in the context of the preceding advertisement and that computer systems had to understand provided advertisements and, further, the products and services to which those advertisements related. In this regard, the '097 patent's systems and methods stood in sharp contrast to the conventional and routine approaches of existing systems; they were not

- 19 -

well-understood, routine, or conventional.

53.    The '489 patent describes and claims systems for selecting and presenting advertisements in response to processing natural language utterances that use a speech recognition engine, a conversational language processor, and a server to recognize words or phrases in a natural language utterance, interpret those words or phrases, establish context, deliver an advertisement, track a user's interaction patterns associated with delivery of the advertisement, and updating models based on users' interaction patterns associated with that advertisement. Conventional knowledge among persons of ordinary skill in the art did not include such systems and methods, as claimed, nor did skilled artisans at the time recognize the substantial advantages associated with such systems and methods, including based on the use of a speech recognition engine with conversational language processor to recognize words or phrases in a natural language utterance, interpret those words or phrases, establish context, deliver an advertisement, and track a user's interaction pattern associated with that advertisement based on a variety of updated information and retained knowledge about the user. In this regard, the '489 patent's systems and methods stood in sharp contrast to the conventional and routine approaches of existing systems that, for example, required a user to memorize specific syntaxes, words, phrases, concepts, semantic indicators, or other keywords/qualifiers, and could not also retain information based on a user's interaction to delivered advertisements; they were not well-understood, routine, or conventional.

54.    The '274 patent describes and claims systems for delivering targeted advertisements and tracking advertisement interactions in voice recognition contexts which includes receiving a natural language utterance, identifying requests associated with that utterance, determining that the utterance contains an incomplete or ambiguous request, selecting and presenting advertisements associated with the natural language utterance to a user's device, monitoring interaction

between the user and the advertisements, and interpreting that a request is incomplete or ambiguous based on the interaction. VoiceBox Technologies knew that interactions with selected advertisements could be used to determine meaning of natural language utterances, including identifying when those utterances were incomplete or ambiguous requests. The conventional approach would have been to direct the user to utter from a discrete dictionary of words, and before the '274 patent, systems would have forced users to use a fixed set of commands or keywords to communicate requests in ways that systems can understand in order to avoid incomplete or ambiguous requests. Existing systems also would not have been able to use selected advertisements, or a user's interactions with them, to interpret a user's request. The inventors of the '274 patent, however, recognized requests may not necessarily be incomplete or ambiguous when viewed in the context of interactions with selected advertisements. In this regard, the '274 patent's systems and methods stood in sharp contrast to the conventional and routine approaches of existing systems; they were not well-understood, routine, or conventional.

55.     For at least these reasons, persons of ordinary skill in the art would not consider the claim limitations of the '176, '097, '489, and '274 patents—either alone or in combination—to recite abstract, well-understood, routine, or conventional concepts. Instead, skilled artisans would recognize that these patents' descriptions and the ordered combinations of their claims are directed to novel, non-obvious, and unconventional innovations.

56.     The VoiceBox Patents were duly issued by the U.S. Patent and Trademark Office and are valid, including under 35 U.S.C. §§ 101, 102, 103, and 112.

**C. IBM's Knowledge of VoiceBox Technologies' Innovations**

57.     IBM knew about VoiceBox Technologies' conversational voice technology since at least as early as 2003, when IBM and VoiceBox Technologies began working collaboratively on certain projects.

58.     The IBM-VoiceBox Technologies relationship, memorialized in multiple agreements, extended to in-car voice systems for major automotive manufacturers. And IBM publicly touted this relationship, including at its own "Future of Speech Day" event, an industry-wide showcase it hosted. *See* Bailor, *IBM Raises Its Voice*, CRM MAGAZINE (Jan. 25, 2006) ("IBM took additional steps toward strengthening its footing in the speech technology market Tuesday, revealing a handful of speech recognition-focused partnerships and products at its Future of Speech Day, in New York. Among the announcements were partnerships with Openstream, a mobile Internet infrastructure platform and applications provider, and VoiceBox Technologies, which delivers conversational voice-search functionality, and an upgrade to the IBM Embedded ViaVoice software."), *available at* https://www.destinationcrm.com/Articles/CRM-News/CRM-Featured-Articles/IBM-Raises-Its-Voice--47653.aspx.

59.     By the mid-2000s, the relationship between IBM and VoiceBox Technologies had drawn national media attention, including from the New York Times. *See, e.g.*, Quain, *Voice Recognition Closes In on HAL*, N.Y. TIMES (May 20, 2007) ("VoiceBox developed specialized software programs that overlay existing speech recognition engines like those from I.B.M. and Nuance. These digital agents are designed specifically to interpret the driver's intention and determine the correct context for a given request. In a recent demonstration—driving around Manhattan with a prototype portable VoiceBox system—the advantage of such sophisticated software was

immediately apparent."), *also available at* https://www.nytimes.com/2007/05/20/automobiles/20VOICE.html. In short, as a result of its relationship with VoiceBox Technologies, IBM had direct and repeated exposure to the technologies and innovations that became the subjects of the VoiceBox Patents.

60.    IBM's knowledge of VoiceBox Technologies' innovations only deepened in subsequent years. For example, at least by the late 2000s, IBM had begun working with Nuance Communications ("Nuance"), the company that would later acquire VoiceBox Technologies and portions of VoiceBox Technologies' patent portfolio (patents not at issue here). Nuance became IBM's preferred partner for speech technologies, and IBM and Nuance went on to pursue joint research, enter IP collaboration agreements, and publicize and tout results of their partnership, including with respect to applications of IBM's Watson, e.g., in healthcare settings. On information and belief, IBM's close relationship with Nuance further demonstrates IBM's awareness of, or willful blindness to, the VoiceBox Patents and its infringement, as IBM had knowledge of Nuance patent assets acquired from VoiceBox Technologies and thus knew or should have known of the VoiceBox Patents.

61.    Furthermore, multiple later-issued IBM patents cite back to the VoiceBox Patents as prior art references, demonstrating that IBM has known about VoiceBox's patent portfolio for years. *See, e.g.*, U.S. Patent No. 10,971,134 (assigned to IBM as applicant and issued April 6, 2021, from Application No. 16/176,386, filed October 31, 2018) (IBM disclosed the '274 patent in its Information Disclosure Statement ("IDS") filed October 31, 2018 and addressed a non-final rejection involving the '274 patent in a September 24, 2020 office action response); U.S. Patent No. 10,992,629 (assigned to IBM as applicant and issued April 27, 2021, from Application

No. 16/197,553, filed November 21, 2018) (IBM disclosed the '681 patent in an IDS filed September 17, 2019); U.S. Patent No. 10,235,990 (assigned to IBM as applicant and issued March 19, 2019, from Application No. 15/398,029, filed January 4, 2017) (IBM disclosed the '681 patent in its IDS filed January 11, 2017); U.S. Patent No. 10,373,515 (assigned to IBM as applicant and issued August 6, 2019, from Application No. 15/397,996, filed January 4, 2017) (same); U.S. Patent No. 10,770,072 (assigned to IBM as applicant and issued September 8, 2020, from Application No. 16/214,696, filed December 10, 2018) (IBM disclosed the '681 patent in its IDS filed December 10, 2018); U.S. Patent No. 10,318,639 (assigned to IBM as applicant, assigned post-issuance to Kyndryl, Inc., and issued June 11, 2019, from Application No. 15/423,776, filed February 3, 2017) (IBM disclosed the '681 patent in an IDS filed March 27, 2017); U.S. Patent No. 11,711,469 (assigned to IBM as applicant and issued July 25, 2023, from Application No. 17/316,615, filed May 10, 2021) (IBM disclosed the '681 patent in its IDS filed May 10, 2021).

62.     Additionally, in 2019, VoiceBox asserted multiple patents from its portfolio against Amazon.com, Inc. in a lawsuit in this District, including a number of the VoiceBox Patents asserted in this case. *See VB Assets, LLC v. Amazon.com, Inc.*, C.A. No. 1:19-cv-01410-MN (D. Del. filed July 29, 2019). The litigation was widely reported on and, on information and belief, known to companies active in the speech-recognition industry, including IBM.

63.     Despite this long history of exposure to and awareness of the VoiceBox Patents, IBM never sought or obtained a license to use VoiceBox's patented technologies. IBM's continued development and sale of the Accused IBM Products thus has been, and continues to be, willful, deliberate, and undertaken with full knowledge of—or at minimum willful blindness to—the VoiceBox Patents, VoiceBox's patent rights, and the Accused IBM Products' operational infringement.

## COUNT I

### (Infringement of the '681 Patent)

64.    VoiceBox realleges and incorporates the allegations of the preceding paragraphs of this complaint as though fully stated herein.

65.    IBM has infringed and continues to infringe, literally and/or under the doctrine of equivalents, the '681 patent by making, using, selling, offering for sale, and/or importing into the United States the Accused IBM Products, which in operation meet the limitations of the patented methods in the '681 patent, in violation of 35 U.S.C. § 271. Exemplary evidence and an exemplary chart mapping a claim of the '681 patent to the Accused IBM Products and demonstrating IBM's infringement can be found in Exhibit I. VoiceBox anticipates identifying additional asserted claims in accordance with the case schedule and its discovery obligations.

66.    To the extent any steps of asserted claimed methods of the '681 patent are deemed performed by another party, such as end users on end user devices, IBM directs or controls such performance because IBM: (i) conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method; and (ii) establishes the manner or timing of that performance. IBM conditions users' participation in voice interactions with the Accused IBM Products and receipt of the benefits of the Accused IBM Products on users performing claimed method step(s) because, for example, IBM designed its software so that user devices must receive utterances from users in order for IBM's software to perform the remaining steps of the methods and provide a response to the user. IBM establishes the manner or timing of that performance through its software and user interface design, terms of service, user documentation, setup guides,

and in-product instructions.[2] Accordingly, any method steps performed by a user device, for example, are attributable to IBM and IBM is liable for direct infringement.

67.     IBM also has been and is inducing infringement of the '681 patent by actively encouraging others to use Accused IBM Products and methods utilizing same, with knowledge of the '681 patent and the Accused IBM Products' infringement, or willful blindness thereto. This includes, for example, implementations of the Accused IBM Products by IBM's customers and licensees in manners meeting and practicing the limitations of the patented methods of the '681 patent.[3] IBM makes the infringing Accused IBM Products available to its customers and licensees, e.g., through its own website and cloud platform, instructs such users to use the Accused IBM Products in an infringing manner, e.g., through the provision of technical support, documentation, and consulting and support services, and profits from such users' deployment of the infringing Accused IBM Products. *See* footnote 2.

---

[2] *See, e.g.*, watsonx Assistant v2 - IBM Cloud API Docs, IBM CLOUD, *available at* https://cloud.ibm.com/apidocs/assistant-v2 (last updated Sept. 27, 2024); Controlling the conversational flow - watsonx Assistant - IBM Cloud Docs, IBM CLOUD, *available at* https://cloud.ibm.com/docs/watson-assistant?topic=watson-assistant-dialog-runtime (last updated Dec. 27, 2024); watsonx Assistant improves intent detection accuracy, leads against AI vendors cited in published study, IBM, *available at* https://www.ibm.com/new/product-blog/watson-assistant-improves-intent-detection-accuracy-leads-against-ai-vendors-cited-in-published-study (last visited Jul. 9, 2026); Personalizing the dialog with context - watsonx Assistant - IBM Cloud Docs, IBM CLOUD, *available at* https://cloud.ibm.com/docs/watson-assistant?topic=watson-assistant-dialog-runtime-context#dialog-runtime-context-update (last updated Oct. 27, 2023); Context variables, IBM WATSONX ORCHESTRATE ADK, *available at* https://developer.watson-orchestrate.ibm.com/webchat/context_variables (last visited Jul. 9, 2026); IBM watsonx Assistant: Driving generative AI innovation with Conversational Search, IBM, *available at* https://www.ibm.com/new/product-blog/ibm-watsonx-assistant-driving-generative-ai-innovation-with-conversational-search (last visited Jul. 9, 2026).

[3] *See, e.g.*, Expertise on Call, *available at* https://www.ibm.com/case-studies/humana (Humana); Fueling CVS Health's covid response with AI, LINKEDIN (May 11, 2021), *available at* https://www.linkedin.com/pulse/fueling-cvs-healths-covid-response-ai-shobhit-varshney/ (CVS Health); What It Really Takes to Scale AI to Deliver a Digital-First Experience, LINKEDIN (Jun. 6, 2021), *available at* https://www.linkedin.com/pulse/what-really-takes-scale-ai-deliver-digital-first-shobhit-varshney/ (Elevance Health).

68.     Additionally, for at least the reasons discussed above in Paragraphs 57-63, on information and belief, IBM knew of or was willfully blind to the existence of the '681 patent years before this suit was filed (e.g., as early as the '681 patent's December 6, 2011 issuance or IBM's citation of the '681 patent in its own patent filings), and also knew of or was willfully blind to the fact that its actions would directly and indirectly infringe this patent.

69.     Alternatively and additionally, IBM has had actual notice that it, its customers, licensees, and end users, or combinations of the foregoing infringe the '681 patent with the Accused IBM Products at least as of the date of the filing of this Complaint.

70.     For at least these reasons, IBM's infringement has been, and continues to be, knowing, intentional, and willful.

71.     IBM's acts of infringing the '681 patent have caused and will continue to cause VoiceBox damages for which VoiceBox is entitled to compensation pursuant to 35 U.S.C. § 284.

72.     This case is exceptional and, therefore, VoiceBox is entitled to an award of attorney's fees pursuant to 35 U.S.C. § 285.

## COUNT II
### (Infringement of the '699 Patent)

73.     VoiceBox realleges and incorporates the allegations of the preceding paragraphs of this complaint as though fully stated herein.

74.     IBM has infringed and continues to infringe, literally and/or under the doctrine of equivalents, the '699 patent by making, using, selling, offering for sale, and/or importing into the United States the Accused IBM Products, which in operation meet the limitations of the patented methods in the '699 patent, in violation of 35 U.S.C. § 271. Exemplary evidence and an exemplary chart mapping a claim of the '699 patent to the Accused IBM Products and demonstrating IBM's

infringement can be found in Exhibit J. VoiceBox anticipates identifying additional asserted claims in accordance with the case schedule and its discovery obligations.

75.    To the extent any steps of asserted claimed methods of the '699 patent are deemed performed by another party, such as end users on end user devices, IBM directs or controls such performance because IBM: (i) conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method; and (ii) establishes the manner or timing of that performance. IBM conditions users' participation in voice interactions with the Accused IBM Products and receipt of the benefits of the Accused IBM Products on users performing claimed method step(s) because, for example, IBM designed its software so that user devices must receive utterances from users in order for IBM's software to perform the remaining steps of the methods and provide a response to the user. IBM establishes the manner or timing of that performance through its software and user interface design, terms of service, user documentation, setup guides, and in-product instructions.[4] Accordingly, any method steps performed by a user device, for example, are attributable to IBM and IBM is liable for direct infringement.

---

[4] *See, e.g.*, watsonx Assistant v2 - IBM Cloud API Docs, IBM CLOUD, *available at* https://cloud.ibm.com/apidocs/assistant-v2 (last updated Sept. 27, 2024); Controlling the conversational flow - watsonx Assistant - IBM Cloud Docs, IBM CLOUD, *available at* https://cloud.ibm.com/docs/watson-assistant?topic=watson-assistant-dialog-runtime (last updated Dec. 27, 2024); watsonx Assistant improves intent detection accuracy, leads against AI vendors cited in published study, IBM, *available at* https://www.ibm.com/new/product-blog/watson-assistant-improves-intent-detection-accuracy-leads-against-ai-vendors-cited-in-published-study (last visited Jul. 9, 2026); Personalizing the dialog with context - watsonx Assistant - IBM Cloud Docs, IBM CLOUD, *available at* https://cloud.ibm.com/docs/watson-assistant?topic=watson-assistant-dialog-runtime-context#dialog-runtime-context-update (last updated Oct. 27, 2023); Context variables, IBM WATSONX ORCHESTRATE ADK, *available at* https://developer.watson-orchestrate.ibm.com/webchat/context_variables (last visited Jul. 9, 2026); IBM watsonx Assistant: Driving generative AI innovation with Conversational Search, IBM, *available at* https://www.ibm.com/new/product-blog/ibm-watsonx-assistant-driving-generative-ai-innovation-with-conversational-search (last visited Jul. 9, 2026); Integration variables - IBM watsonx, IBM, *available at* https://www.ibm.com/docs/en/watsonx/watson-orchestrate/base?topic=reference-integration-variables (last updated Jul. 13, 2026); What is speech to text?, IBM, *available at*

76.     IBM also has been and is inducing infringement of the '699 patent by actively encouraging others to use Accused IBM Products and methods utilizing same, with knowledge of the '699 patent and the Accused IBM Products' infringement, or willful blindness thereto. This includes, for example, implementations of the Accused IBM Products by IBM's customers and licensees in manners meeting and practicing the limitations of the patented methods of the '699 patent. *See* footnote 3. IBM makes the infringing Accused IBM Products available to its customers and licensees, e.g., through its own website and cloud platform, instructs such users to use the Accused IBM Products in an infringing manner, e.g., through the provision of technical support, documentation, and consulting and support services, and profits from such users' deployment of the infringing Accused IBM Products. *See* footnote 4.

77.     Additionally, for at least the reasons discussed above in Paragraphs 57-63, on information and belief, IBM knew of or was willfully blind to the existence of the '699 patent years before this suit was filed (e.g., as early as the '699 patent's August 25, 2020 issuance) and also knew of or was willfully blind to the fact that its actions would directly and indirectly infringe this patent.

78.     Alternatively and additionally, IBM has had actual notice that it, its customers, licensees, and end users, or combinations of the foregoing infringe the '699 patent with the Accused IBM Products at least as of the date of the filing of this Complaint.

---

https://www.ibm.com/think/topics/speech-to-text (last visited Jul. 9, 2026); Tone Classification, IBM CLOUD PAK FOR DATA, *available at* https://dataplatform.cloud.ibm.com/docs/content/wsj/analyze-data/watson-nlp-block-tone.html?context=cpdaas (last updated May 22, 2026); Unlock the Power of Sentiment Analysis with IBM Watson Tone Analyzer, TECH. EVALUATION CTRS., *available at* https://www3.technologyevaluation.com/solutions/53865/ibm-watson-tone-analyzer (last visited Jul. 9, 2026).

79.    For at least these reasons, IBM's infringement has been, and continues to be, knowing, intentional, and willful.

80.    IBM's acts of infringing the '699 patent have caused and will continue to cause VoiceBox damages for which VoiceBox is entitled to compensation pursuant to 35 U.S.C. § 284.

81.    This case is exceptional and, therefore, VoiceBox is entitled to an award of attorney's fees pursuant to 35 U.S.C. § 285.

## COUNT III

### (Infringement of the '341 Patent)

82.    VoiceBox realleges and incorporates the allegations of the preceding paragraphs of this complaint as though fully stated herein.

83.    IBM has infringed and continues to infringe, literally and/or under the doctrine of equivalents, the '341 patent by making, using, selling, offering for sale, and/or importing into the United States the Accused IBM Products, which in operation meet the limitations of the patented methods in the '341 patent, in violation of 35 U.S.C. § 271. Exemplary evidence and an exemplary chart mapping a claim of the '341 patent to the Accused IBM Products and demonstrating IBM's infringement can be found in Exhibit K. VoiceBox anticipates identifying additional asserted claims in accordance with the case schedule and its discovery obligations.

84.    To the extent any steps of asserted claimed methods of the '341 patent are deemed performed by another party, such as end users on end user devices, IBM directs or controls such performance because IBM: (i) conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method; and (ii) establishes the manner or timing of that performance. IBM conditions users' participation in voice interactions with the Accused IBM Products and receipt of the benefits of the Accused IBM Products on users performing claimed

method step(s) because, for example, IBM designed its software so that user devices must receive utterances from users in order for IBM's software to perform the remaining steps of the methods and provide a response to the user. IBM establishes the manner or timing of that performance through its software and user interface design, terms of service, user documentation, setup guides, and in-product instructions.[5] Accordingly, any method steps performed by a user device, for example, are attributable to IBM and IBM is liable for direct infringement.

85.    IBM also has been and is inducing infringement of the '341 patent by actively encouraging others to use Accused IBM Products and methods utilizing same, with knowledge of the '341 patent and the Accused IBM Products' infringement, or willful blindness thereto. This includes, for example, implementations of the Accused IBM Products by IBM's customers and licensees in manners meeting and practicing the limitations of the patented systems and methods of the '341 patent. *See* footnote 3. IBM makes the infringing Accused IBM Products available to its customers and licensees, e.g., through its own website and cloud platform, instructs such users

---

[5] *See, e.g.*, watsonx Assistant v2 - IBM Cloud API Docs, IBM CLOUD, *available at* https://cloud.ibm.com/apidocs/assistant-v2 (last updated Sept. 27, 2024); Controlling the conversational flow - watsonx Assistant - IBM Cloud Docs, IBM CLOUD, *available at* https://cloud.ibm.com/docs/watson-assistant?topic=watson-assistant-dialog-runtime (last updated Dec. 27, 2024); watsonx Assistant improves intent detection accuracy, leads against AI vendors cited in published study, IBM, *available at* https://www.ibm.com/new/product-blog/watson-assistant-improves-intent-detection-accuracy-leads-against-ai-vendors-cited-in-published-study (last visited Jul. 9, 2026); Personalizing the dialog with context - watsonx Assistant - IBM Cloud Docs, IBM CLOUD, *available at* https://cloud.ibm.com/docs/watson-assistant?topic=watson-assistant-dialog-runtime-context#dialog-runtime-context-update (last updated Oct. 27, 2023); Context variables, IBM WATSONX ORCHESTRATE ADK, *available at* https://developer.watson-orchestrate.ibm.com/webchat/context_variables (last visited Jul. 9, 2026); IBM watsonx Assistant: Driving generative AI innovation with Conversational Search, IBM, *available at* https://www.ibm.com/new/product-blog/ibm-watsonx-assistant-driving-generative-ai-innovation-with-conversational-search (last visited Jul. 9, 2026); Integration variables - IBM watsonx, IBM, *available at* https://www.ibm.com/docs/en/watsonx/watson-orchestrate/base?topic=reference-integration-variables (last updated Jul. 13, 2026); Class AssistantV2 - ibm-watson, GITHUB, *available at* https://watson-developer-cloud.github.io/node-sdk/master/classes/assistantv2.html (last visited Jul. 9, 2026).

to use the Accused IBM Products in an infringing manner, e.g., through the provision of technical support, documentation, and consulting and support services, and profits from such users' deployment of the infringing Accused IBM Products. *See* footnote 5.

86. Additionally, for at least the reasons discussed above in Paragraphs 57-63, on information and belief, IBM knew of or was willfully blind to the existence of the '341 patent years before this suit was filed (e.g., as early as the '341 patent's December 17, 2019 issuance) and also knew of or was willfully blind to the fact that its actions would directly and indirectly infringe this patent.

87. Alternatively and additionally, IBM has had actual notice that it, its customers, licensees, and end users, or combinations of the foregoing infringe the '341 patent with the Accused IBM Products at least as of the date of the filing of this Complaint.

88. For at least these reasons, IBM's infringement has been, and continues to be, knowing, intentional, and willful.

89. IBM's acts of infringing the '341 patent have caused and will continue to cause VoiceBox damages for which VoiceBox is entitled to compensation pursuant to 35 U.S.C. § 284.

90. This case is exceptional and, therefore, VoiceBox is entitled to an award of attorney's fees pursuant to 35 U.S.C. § 285.

## COUNT IV
### (Infringement of the '628 Patent)

91. VoiceBox realleges and incorporates the allegations of the preceding paragraphs of this complaint as though fully stated herein.

92. IBM has infringed and continues to infringe, literally and/or under the doctrine of equivalents, the '628 patent by making, using, selling, offering for sale, and/or importing into the United States the Accused IBM Products, which in operation meet the limitations of the patented

systems and methods in the '628 patent, in violation of 35 U.S.C. § 271. Exemplary evidence and an exemplary chart mapping a claim of the '628 patent to the Accused IBM Products and demonstrating IBM's infringement can be found in Exhibit L. VoiceBox anticipates identifying additional asserted claims in accordance with the case schedule and its discovery obligations.

93.    To the extent any steps of asserted claimed methods of the '628 patent are deemed performed by another party, such as end users on end user devices, IBM directs or controls such performance because IBM: (i) conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method; and (ii) establishes the manner or timing of that performance. IBM conditions users' participation in voice interactions with the Accused IBM Products and receipt of the benefits of the Accused IBM Products on users performing claimed method step(s) because, for example, IBM designed its software so that user devices must receive utterances from users in order for IBM's software to perform the remaining steps of the methods and provide a response to the user. IBM establishes the manner or timing of that performance through its software and user interface design, terms of service, user documentation, setup guides, and in-product instructions.[6] Accordingly, any method steps performed by a user device, for example, are attributable to IBM and IBM is liable for direct infringement.

---

[6] *See, e.g.*, watsonx Assistant v2 - IBM Cloud API Docs, IBM CLOUD, *available at* https://cloud.ibm.com/apidocs/assistant-v2 (last updated Sept. 27, 2024); Controlling the conversational flow - watsonx Assistant - IBM Cloud Docs, IBM CLOUD, *available at* https://cloud.ibm.com/docs/watson-assistant?topic=watson-assistant-dialog-runtime (last updated Dec. 27, 2024); watsonx Assistant improves intent detection accuracy, leads against AI vendors cited in published study, IBM, *available at* https://www.ibm.com/new/product-blog/watson-assistant-improves-intent-detection-accuracy-leads-against-ai-vendors-cited-in-published-study (last visited Jul. 9, 2026); Personalizing the dialog with context - watsonx Assistant - IBM Cloud Docs, IBM CLOUD, *available at* https://cloud.ibm.com/docs/watson-assistant?topic=watson-assistant-dialog-runtime-context#dialog-runtime-context-update (last updated Oct. 27, 2023); Context variables, IBM WATSONX ORCHESTRATE ADK, *available at* https://developer.watson-orchestrate.ibm.com/webchat/context_variables (last visited Jul. 9, 2026); IBM watsonx Assistant: Driving generative AI innovation with Conversational Search, IBM, *available at*

94.     IBM also has been and is inducing infringement of the '628 patent by actively encouraging others to use Accused IBM Products and methods utilizing same, with knowledge of the '628 patent and the Accused IBM Products' infringement, or willful blindness thereto. This includes, for example, implementations of the Accused IBM Products by IBM's customers and licensees in manners meeting and practicing the limitations of the patented systems and methods of the '628 patent. *See* footnote 3. IBM makes the infringing Accused IBM Products available to its customers and licensees, e.g., through its own website and cloud platform, instructs such users to use the Accused IBM Products in an infringing manner, e.g., through the provision of technical support, documentation, and consulting and support services, and profits from such users' deployment of the infringing Accused IBM Products. *See* footnote 6.

95.     Additionally, for at least the reasons discussed above in Paragraphs 57-63, on information and belief, IBM knew of or was willfully blind to the existence of the '628 patent years before this suit was filed (e.g., as early as the '628 patent's December 24, 2019 issuance) and also knew of or was willfully blind to the fact that its actions would directly and indirectly infringe this patent.

96.     Alternatively and additionally, IBM has had actual notice that it, its customers, licensees, and end users, or combinations of the foregoing infringe the '628 patent with the Accused IBM Products at least as of the date of the filing of this Complaint.

---

https://www.ibm.com/new/product-blog/ibm-watsonx-assistant-driving-generative-ai-innovation-with-conversational-search (last visited Jul. 9, 2026); Integration variables - IBM watsonx, IBM, *available at* https://www.ibm.com/docs/en/watsonx/watson-orchestrate/base?topic=reference-integration-variables (last updated Jul. 13, 2026); getting-started-logging.md - watson - IBM Cloud Docs, GITHUB, available at https://github.com/ibm-cloud-docs/watson/blob/master/getting-started-logging.md (updated May 15, 2025).

97. For at least these reasons, IBM's infringement has been, and continues to be, knowing, intentional, and willful.

98. IBM's acts of infringing the '628 patent have caused and will continue to cause VoiceBox damages for which VoiceBox is entitled to compensation pursuant to 35 U.S.C. § 284.

99. This case is exceptional and, therefore, VoiceBox is entitled to an award of attorney's fees pursuant to 35 U.S.C. § 285.

## COUNT V
### (Infringement of the '176 Patent)

100. VoiceBox realleges and incorporates the allegations of the preceding paragraphs of this complaint as though fully stated herein.

101. IBM has infringed and continues to infringe, literally and/or under the doctrine of equivalents, the '176 patent by making, using, selling, offering for sale, and/or importing into the United States the Accused IBM Products, which in operation meet the limitations of the patented systems and methods in the '176 patent in violation of 35 U.S.C. § 271. Exemplary evidence and an exemplary chart mapping claims of the '176 patent to the Accused IBM Products and demonstrating IBM's infringement can be found in Exhibit M. VoiceBox anticipates identifying additional asserted claims in accordance with the case schedule and its discovery obligations.

102. To the extent any steps of asserted claimed methods of the '176 patent are deemed performed by another party, such as end users on end user devices, IBM directs or controls such performance because IBM: (i) conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method; and (ii) establishes the manner or timing of that performance. IBM conditions users' participation in voice interactions with the Accused IBM Products and receipt of the benefits of the Accused IBM Products on users performing claimed method step(s) because, for example, IBM designed its software so that user devices must receive

utterances from users in order for IBM's software to perform the remaining steps of the methods and provide a response to the user. IBM establishes the manner or timing of that performance through its software and user interface design, terms of service, user documentation, setup guides, and in-product instructions.[7] Accordingly, any method steps performed by a user device, for example, are attributable to IBM and IBM is liable for direct infringement.

103.    IBM also has been and is inducing infringement of the '176 patent by actively encouraging others to use Accused IBM Products and methods utilizing same, with knowledge of the '176 patent and the Accused IBM Products' infringement, or willful blindness thereto. This includes, for example, implementations of the Accused IBM Products by IBM's customers and licensees in manners meeting and practicing the limitations of the patented systems and methods of the '176 patent.[8] IBM makes the infringing Accused IBM Products available to its customers and licensees, e.g., through its own website and cloud platform, instructs such users to use the Accused IBM Products in an infringing manner, e.g., through the provision of technical support,

---

[7] *See, e.g.*, watsonx Assistant v2 - IBM Cloud API Docs, IBM CLOUD, *available at* https://cloud.ibm.com/apidocs/assistant-v2 (last updated Sept. 27, 2024); Controlling the conversational flow - watsonx Assistant - IBM Cloud Docs, IBM CLOUD, *available at* https://cloud.ibm.com/docs/watson-assistant?topic=watson-assistant-dialog-runtime (last updated Dec. 27, 2024); watsonx Assistant improves intent detection accuracy, leads against AI vendors cited in published study, IBM, *available at* https://www.ibm.com/new/product-blog/watson-assistant-improves-intent-detection-accuracy-leads-against-ai-vendors-cited-in-published-study (last visited Jul. 9, 2026); Personalizing the dialog with context - watsonx Assistant - IBM Cloud Docs, IBM CLOUD, *available at* https://cloud.ibm.com/docs/watson-assistant?topic=watson-assistant-dialog-runtime-context#dialog-runtime-context-update (last updated Oct. 27, 2023); Toyota Prius Prime Embraces Cognitive *Ads, IBM, ava*ilable at https://www.ibm.com/case-studies/toyota-prius-prime-watson-advertising (last visited Jul. 9, 2026); IBM Watson Assistant phone integration demo, IBM MEDIACENTER, *ava*ilable at https://mediacenter.ibm.com/media/IBM+Watson+Assistant+phone+integration+demo/1_2on13mix/145340842 (last visited Jul. 9, 2026).

[8] *See, e.g.*, Toyota Prius Prime Embraces Cognitive Ads, *available at* https://www.ibm.com/case-studies/toyota-prius-prime-watson-advertising; Watson Ads is Turning the Tables on Cognitive Learning in Advertising, EXCHANGEWIRE (Sept. 9, 2016), *available at* https://www.exchangewire.com/blog/2016/09/09/45267/; *see also* footnote 3.

documentation, and consulting and support services, and profits from such users' deployment of the infringing Accused IBM Products. *See* footnote 7.

104. Additionally, for at least the reasons discussed above in Paragraphs 57-63, on information and belief, IBM knew of or was willfully blind to the existence of the '176 patent years before this suit was filed (e.g., as early as the '176 patent's October 19, 2010 issuance) and also knew of or was willfully blind to the fact that its actions would directly and indirectly infringe this patent.

105. Alternatively and additionally, IBM has had actual notice that it, its customers, licensees, and end users, or combinations of the foregoing infringe the '176 patent with the Accused IBM Products at least as of the date of the filing of this Complaint.

106. For at least these reasons, IBM's infringement has been, and continues to be, knowing, intentional, and willful.

107. IBM's acts of infringing the '176 patent have caused and will continue to cause VoiceBox damages for which VoiceBox is entitled to compensation pursuant to 35 U.S.C. § 284.

108. This case is exceptional and, therefore, VoiceBox is entitled to an award of attorney's fees pursuant to 35 U.S.C. § 285.

### COUNT VI
**(Infringement of the '097 Patent)**

109. VoiceBox realleges and incorporates the allegations of the preceding paragraphs of this complaint as though fully stated herein.

110. IBM has infringed and continues to infringe, literally and/or under the doctrine of equivalents, the '097 patent by making, using, selling, offering for sale, and/or importing into the United States the Accused IBM Products, which in operation meet the limitations of the patented systems and methods in the '097 patent in violation of 35 U.S.C. § 271. Exemplary evidence and

an exemplary chart mapping a claim of the '097 patent to the Accused IBM Products and demonstrating IBM's infringement can be found in Exhibit N. VoiceBox anticipates identifying additional asserted claims in accordance with the case schedule and its discovery obligations.

111.    To the extent any steps of asserted claimed methods of the '097 patent are deemed performed by another party, such as end users on end user devices, IBM directs or controls such performance because IBM: (i) conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method; and (ii) establishes the manner or timing of that performance. IBM conditions users' participation in voice interactions with the Accused IBM Products and receipt of the benefits of the Accused IBM Products on users performing claimed method step(s) because, for example, IBM designed its software so that user devices must receive utterances from users in order for IBM's software to perform the remaining steps of the methods and provide a response to the user. IBM establishes the manner or timing of that performance through its software and user interface design, terms of service, user documentation, setup guides, and in-product instructions.[9] Accordingly, any method steps performed by a user device, for example, are attributable to IBM and IBM is liable for direct infringement.

---

[9] *See, e.g.*, watsonx Assistant v2 - IBM Cloud API Docs, IBM CLOUD, *available at* https://cloud.ibm.com/apidocs/assistant-v2 (last updated Sept. 27, 2024); Controlling the conversational flow - watsonx Assistant - IBM Cloud Docs, IBM CLOUD, *available at* https://cloud.ibm.com/docs/watson-assistant?topic=watson-assistant-dialog-runtime (last updated Dec. 27, 2024); watsonx Assistant improves intent detection accuracy, leads against AI vendors cited in published study, IBM, *available at* https://www.ibm.com/new/product-blog/watson-assistant-improves-intent-detection-accuracy-leads-against-ai-vendors-cited-in-published-study (last visited Jul. 9, 2026); Toyota Prius Prime Embraces Cognitive Ads, IBM, *available at* https://www.ibm.com/case-studies/toyota-prius-prime-watson-advertising (last visited Jul. 9, 2026); IBM Watson Assistant phone integration demo, IBM MEDIACENTER, *available at* https://mediacenter.ibm.com/media/IBM+Watson+Assistant+phone+integration+demo/1_2on13mix/145340842 (last visited Jul. 9, 2026); IBM announces Watson-powered ads that think, MARTECH, *available at* https://martech.org/ibm-announces-watson-powered-ads-think/ (last updated May 6, 2021).

112.    IBM also has been and is inducing infringement of the '097 patent by actively encouraging others to use Accused IBM Products and methods utilizing same, with knowledge of the '097 patent and the Accused IBM Products' infringement, or willful blindness thereto. This includes, for example, implementations of the Accused IBM Products by IBM's customers and licensees in manners meeting and practicing the limitations of the patented systems and methods of the '097 patent. *See* footnote 8. IBM makes the infringing Accused IBM Products available to its customers and licensees, e.g., through its own website and cloud platform, instructs such users to use the Accused IBM Products in an infringing manner, e.g., through the provision of technical support, documentation, and consulting and support services, and profits from such users' deployment of the infringing Accused IBM Products. *See* footnote 9.

113.    Additionally, for at least the reasons discussed above in Paragraphs 57-63, on information and belief, IBM knew of or was willfully blind to the existence of the '097 patent years before this suit was filed (e.g., as early as the '097 patent's February 23, 2016 issuance) and also knew of or was willfully blind to the fact that its actions would directly and indirectly infringe this patent.

114.    Alternatively and additionally, IBM has had actual notice that it, its customers, licensees, and end users, or combinations of the foregoing infringe the '097 patent with the Accused IBM Products at least as of the date of the filing of this Complaint.

115.    For at least these reasons, IBM's infringement has been, and continues to be, knowing, intentional, and willful.

116.    IBM's acts of infringing the '097 patent have caused and will continue to cause VoiceBox damages for which VoiceBox is entitled to compensation pursuant to 35 U.S.C. § 284.

117.    This case is exceptional and, therefore, VoiceBox is entitled to an award of attorney's fees pursuant to 35 U.S.C. § 285.

## COUNT VII

### (Infringement of the '489 Patent)

118.    VoiceBox realleges and incorporates the allegations of the preceding paragraphs of this complaint as though fully stated herein.

119.    IBM has infringed and continues to infringe, literally and/or under the doctrine of equivalents, the '489 patent by making, using, selling, offering for sale, and/or importing into the United States the Accused IBM Products, which in operation meet the limitations of the patented systems and methods in the '489 patent in violation of 35 U.S.C. § 271. Exemplary evidence and an exemplary chart mapping a claim of the '489 patent to the Accused IBM Products and demonstrating IBM's infringement can be found in Exhibit O. VoiceBox anticipates identifying additional asserted claims in accordance with the case schedule and its discovery obligations.

120.    To the extent any steps of asserted claimed methods of the '489 patent are deemed performed by another party, such as end users on end user devices, IBM directs or controls such performance because IBM: (i) conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method; and (ii) establishes the manner or timing of that performance. IBM conditions users' participation in voice interactions with the Accused IBM Products and receipt of the benefits of the Accused IBM Products on users performing claimed method step(s) because, for example, IBM designed its software so that user devices must receive utterances from users in order for IBM's software to perform the remaining steps of the methods and provide a response to the user. IBM establishes the manner or timing of that performance through its software and user interface design, terms of service, user documentation, setup guides,

and in-product instructions.[10] Accordingly, any method steps performed by a user device, for example, are attributable to IBM and IBM is liable for direct infringement.

121.    IBM also has been and is inducing infringement of the '489 patent by actively encouraging others to use Accused IBM Products and methods utilizing same, with knowledge of the '489 patent and the Accused IBM Products' infringement, or willful blindness thereto. This includes, for example, implementations of the Accused IBM Products by IBM's customers and licensees in manners meeting and practicing the limitations of the patented systems and methods of the '489 patent. *See* footnote 8. IBM makes the infringing Accused IBM Products available to its customers and licensees, e.g., through its own website and cloud platform, instructs such users to use the Accused IBM Products in an infringing manner, e.g., through the provision of technical

---

[10] *See, e.g.*, watsonx Assistant v2 - IBM Cloud API Docs, IBM CLOUD, *available at* https://cloud.ibm.com/apidocs/assistant-v2 (last updated Sept. 27, 2024); Controlling the conversational flow - watsonx Assistant - IBM Cloud Docs, IBM CLOUD, *available at* https://cloud.ibm.com/docs/watson-assistant?topic=watson-assistant-dialog-runtime (last updated Dec. 27, 2024); watsonx Assistant improves intent detection accuracy, leads against AI vendors cited in published study, IBM, *available at* https://www.ibm.com/new/product-blog/watson-assistant-improves-intent-detection-accuracy-leads-against-ai-vendors-cited-in-published-study (last visited Jul. 9, 2026); Personalizing the dialog with context - watsonx Assistant - IBM Cloud Docs, IBM CLOUD, *available at* https://cloud.ibm.com/docs/watson-assistant?topic=watson-assistant-dialog-runtime-context#dialog-runtime-context-update (last updated Oct. 27, 2023); Context variables, IBM WATSONX ORCHESTRATE ADK, *available at* https://developer.watson-orchestrate.ibm.com/webchat/context_variables (last visited Jul. 9, 2026); IBM watsonx Assistant: Driving generative AI innovation with Conversational Search, IBM, *available at* https://www.ibm.com/new/product-blog/ibm-watsonx-assistant-driving-generative-ai-innovation-with-conversational-search (last visited Jul. 9, 2026); Toyota Prius Prime Embraces Cognitive Ads, IBM, *available at* https://www.ibm.com/case-studies/toyota-prius-prime-watson-advertising (last visited Jul. 9, 2026); IBM Watson Assistant phone integration demo, IBM MEDIACENTER, *available at* https://mediacenter.ibm.com/media/IBM+Watson+Assistant+phone+integration+demo/1_2on13mix/145340842 (last visited Jul. 9, 2026); getting-started-logging.md - watson - IBM Cloud Docs, GITHUB*, available at* https://github.com/ibm-cloud-docs/watson/blob/master/getting-started-logging.md (updated May 15, 2025); Using variables to manage conversation information - IBM watsonx, IBM, available at https://www.ibm.com/docs/en/watsonx/watson-orchestrate/base?topic=actions-using-variables-manage-conversation-information (last updated Jul. 13, 2026).

support, documentation, and consulting and support services, and profits from such users' deployment of the infringing Accused IBM Products. *See* footnote 10.

122.    Additionally, for at least the reasons discussed above in Paragraphs 57-63, on information and belief, IBM knew of or was willfully blind to the existence of the '489 patent years before this suit was filed (e.g., as early as the '489 patent's March 27, 2012 issuance) and also knew of or was willfully blind to the fact that its actions would directly and indirectly infringe this patent.

123.    Alternatively and additionally, IBM has had actual notice that it, its customers, licensees, and end users, or combinations of the foregoing infringe the '489 patent with the Accused IBM Products at least as of the date of the filing of this Complaint.

124.    For at least these reasons, IBM's infringement has been, and continues to be, knowing, intentional, and willful.

125.    IBM's acts of infringing the '489 patent have caused and will continue to cause VoiceBox damages for which VoiceBox is entitled to compensation pursuant to 35 U.S.C. § 284.

126.    This case is exceptional and, therefore, VoiceBox is entitled to an award of attorney's fees pursuant to 35 U.S.C. § 285.

## COUNT VIII
### (Infringement of the '274 Patent)

127.    VoiceBox realleges and incorporates the allegations of the preceding paragraphs of this complaint as though fully stated herein.

128.    IBM has infringed and continues to infringe, literally and/or under the doctrine of equivalents, the '274 patent by making, using, selling, offering for sale, and/or importing into the United States the Accused IBM Products, which in operation meet the limitations of the patented systems and methods in the '274 patent in violation of 35 U.S.C. § 271. Exemplary evidence and

an exemplary chart mapping a claim of the '274 patent to the Accused IBM Products and demonstrating IBM's infringement can be found in Exhibit P. VoiceBox anticipates identifying additional asserted claims in accordance with the case schedule and its discovery obligations.

129.    To the extent any steps of asserted claimed methods of the '274 patent are deemed performed by another party, such as end users on end user devices, IBM directs or controls such performance because IBM: (i) conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method; and (ii) establishes the manner or timing of that performance. IBM conditions users' participation in voice interactions with the Accused IBM Products and receipt of the benefits of the Accused IBM Products on users performing claimed method step(s) because, for example, IBM designed its software so that user devices must receive utterances from users in order for IBM's software to perform the remaining steps of the methods and provide a response to the user. IBM establishes the manner or timing of that performance through its software and user interface design, terms of service, user documentation, setup guides, and in-product instructions.[11] Accordingly, any method steps performed by a user device, for example, are attributable to IBM and IBM is liable for direct infringement.

---

[11] *See, e.g.*, watsonx Assistant v2 - IBM Cloud API Docs, IBM CLOUD, *available at* https://cloud.ibm.com/apidocs/assistant-v2 (last updated Sept. 27, 2024); Controlling the conversational flow - watsonx Assistant - IBM Cloud Docs, IBM CLOUD, *available at* https://cloud.ibm.com/docs/watson-assistant?topic=watson-assistant-dialog-runtime (last updated Dec. 27, 2024); watsonx Assistant improves intent detection accuracy, leads against AI vendors cited in published study, IBM, *available at* https://www.ibm.com/new/product-blog/watson-assistant-improves-intent-detection-accuracy-leads-against-ai-vendors-cited-in-published-study (last visited Jul. 9, 2026); Toyota Prius Prime Embraces Cognitive Ads, IBM, *available at* https://www.ibm.com/case-studies/toyota-prius-prime-watson-advertising (last visited Jul. 9, 2026); IBM Watson Assistant phone integration demo, IBM MEDIACENTER, *available at* https://mediacenter.ibm.com/media/IBM+Watson+Assistant+phone+integration+demo/1_2on13mix/145340842 (last visited Jul. 9, 2026); Put Personalization in the Driver's Seat, IBM Watson Advertising (2021), *available at* https://mmaglobal.com/files/webinars/ibm_wa_auto_september_webinar_final_1.pdf.

130.    IBM also has been and is inducing infringement of the '274 patent by actively encouraging others to use Accused IBM Products and methods utilizing same, with knowledge of the '274 patent and the Accused IBM Products' infringement, or willful blindness thereto. This includes, for example, implementations of the Accused IBM Products by IBM's customers and licensees in manners meeting and practicing the limitations of the patented systems and methods of the '274 patent. *See* footnote 8. IBM makes the infringing Accused IBM Products available to its customers and licensees, e.g., through its own website and cloud platform, instructs such users to use the Accused IBM Products in an infringing manner, e.g., through the provision of technical support, documentation, and consulting and support services, and profits from such users' deployment of the infringing Accused IBM Products. *See* footnote 11.

131.    Additionally, for at least the reasons discussed above in Paragraphs 57-63, on information and belief, IBM knew of or was willfully blind to the existence of the '274 patent years before this suit was filed (e.g., as early as the '274 patent's September 3, 2013 issuance or IBM's citation of the '274 patent in its own patent filings), and also knew of or was willfully blind to the fact that its actions would directly and indirectly infringe this patent.

132.    Alternatively and additionally, IBM has had actual notice that it, its customers, licensees, and end users, or combinations of the foregoing infringe the '274 patent with the Accused IBM Products at least as of the date of the filing of this Complaint.

133.    For at least these reasons, IBM's infringement has been, and continues to be, knowing, intentional, and willful.

134.    IBM's acts of infringing the '274 patent have caused and will continue to cause VoiceBox damages for which VoiceBox is entitled to compensation pursuant to 35 U.S.C. § 284.

135.    This case is exceptional and, therefore, VoiceBox is entitled to an award of attorney's fees pursuant to 35 U.S.C. § 285.

## JURY DEMAND

VoiceBox demands a jury trial on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, VoiceBox respectfully requests that the Court find in its favor and against IBM, and grant VoiceBox the following relief:

a. A judgment that IBM has infringed and is infringing, directly and indirectly, the '681 patent, '699 patent, '341 patent, '628 patent, '176 patent, '097 patent, '489 patent, and '274 patent.

b. A judgment that IBM accounts for and pays damages adequate to compensate Voice-Box for IBM's infringement of one or more claims of the VoiceBox Patents, including for post-trial infringing acts, pursuant to 35 U.S.C. § 284;

c. A judgment that IBM has willfully infringed the '681 patent, '699 patent, '341 patent, '628 patent, '176 patent, '097 patent, '489 patent, and '274 patent, and an increase in the damages award to VoiceBox of up to three times the amount assessed, pursuant to 35 U.S.C. § 284;

d. A declaration that this case is exceptional and an award of reasonable attorneys' fees in accordance with 35 U.S.C. § 285;

e. Pre-judgment and post-judgment interest on damages;

f. Costs of this action; and

g. All other and further relief as this Court deems just and proper.

Dated: July 16, 2026

Respectfully submitted,

FARNAN LLP

*/s/ Brian E. Farnan*
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market St., 12th Floor
Wilmington, DE 19801
(302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

David J. Lender
(*pro hac vice* forthcoming)
Rocco J. Recce
(*pro hac vice* forthcoming)
Stephanie L. Lee
(*pro hac vice* forthcoming)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
david.lender@weil.com
rocco.recce@weil.com
steph.lee@weil.com

Gabriel S. Gross
(*pro hac vice* forthcoming)
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, California 94065
Telephone: (650) 802-3000
Facsimile: (650) 802-3100
gabe.gross@weil.com

Christopher W. Henry
(*pro hac vice* forthcoming)
WEIL, GOTSHAL & MANGES LLP
1001 Boylston Street, Suite 300
Boston, Massachusetts 02115
Telephone: (617) 772-8300
Facsimile: (617) 772-8333
chris.henry@weil.com

Bryce Bing Liu
*(pro hac vice* forthcoming)

WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
Telephone: (202) 682-7000
Facsimile: (202) 857-0940
bryce.liu@weil.com

David Greenbaum
*(pro hac vice* forthcoming)
GREENBAUM LAW LLC
210 Allison Court
Englewood, New Jersey 07631
david@greenbaum.law

*Attorneys for Plaintiff VB Assets, LLC*

- 47 -